This view is strengthened by the absence of Donnell from his home on Monday night, until a short time before daylight on Tuesday morning; and the defendants being together on that morning at Donnell's, and their subsequent conduct, all conduce to show that they had a most favorable opportunity of doing the act complained of. And they sought this opportunity, it would seem from the evidence, by extraordinary efforts, and a singular combination of circumstances occurred which would have enabled them to perpetrate the act. Whether they are guilty. or not. it is for you to determine. It is no evidence that an individual has done a wrong who had an opportunity of doing it. But if such opportunity be connected with circumstances, from which an inference may be fairly drawn, of an intention to do the act, and the act be done by some one, the opportunity of doing it becomes an important fact.

Circumstantial evidence may prove a fact as satisfactorily as positive proof. And where the circumstances are of such a character as necessarily to implicate an individual, he is required to exculpate himself by proof. If the defendants removed the fugitives from the fodder house, and by that means they were enabled to escape, so that their services have been lost to their master, the defendants are liable in this form of action. That the defendants knew they were fugitives from labor, is shown by the confessions of Donnell, and by the circumstances of the case. To suppose that they could have been ignorant of this knowledge, is to presume against all the facts in the case. Liability attaches from "harboring or concealing" the fugitives. "To harbor" is defined by Worcester to be, "to rescue, to receive clandestinely and without lawful authority." And to conceal is "to hide, to keep secret, to secrete, to cover, to disguise." And by Webster, "to withdraw from the observation, to cover, or keep from sight."

In regard to the damages, should you find for the plaintiff, the court have been requested to charge you, that as a recovery in this case will be no bar to the plaintiff's claim on the fugitives, the damages should be nominal. I can only say that this action is given in the language of the act of congress. for the injury received. And of this you are to judge. The services of the fugitives are proved to have been worth to the plaintiff, by one witness. fifteen hundred dollars, and by another, fifteen hundred and fifty dollars. Whether a recovery in this case extinguishes the right of the master, is not a matter for your consideration, but the amount of injury received by him, by the acts of the defendants. It is clear, that the damages recovered in this form of action, are not given as a penalty. The act of congress gives a penalty to the plaintiff of five hundred dollars against one who has secreted a fugitive from labor, with notice, or for hindering his arrest, or rescuing him after he shall have been arrested.

Slavery is an exciting topic, in whatever form it may be considered; and no political question can be more deeply interesting to any people. But it can only come before us judicially. Here great principles are discussed, and acted on only as they bear upon the rights of litigant parties. The power to establish slavery, in my judgment, does not belong to the federal government. It is not found in the enumerated federal powers, nor can it be implied from the necessary exercise of any one of them; but as a right belonging to the states respectively, it is recognized. The clause in the constitution which has been read, and the act of congress in regard to fugitives from labor, were intended to cover the services of slaves as well as those of apprentices. From the history of the times, we know the recognition of this power in the states, and in this form, was essential to the adoption of the constitution; and on this principle of compromise, the compact of the Union was formed. The constitution has made us one people,— a nation—a great nation;—a nation that stands proudly among the nations of the earth; and, if we shall maintain its principles in the same spirit which led to its formation, our country will be advanced to a height of prosperity, as far beyond that which we now enjoy, as our present position is above that which our fathers occupied when the constitution was formed. If the guaranties of this fundamental law be disregarded, all our hopes for the future, as regards the prosperity, the greatness, and glory of our country must perish. We must stand firmly by the principles of the constitution, and maintain the rights secured by it, to the citizens of the states respectively; and, whatever may be the excitement and turmoil in other places, we must here act calmly and deliberately, free from all influences which do not arise from the facts and law of the case.

The jury found for the plaintiff, and assessed his damages at fifteen hundred dollars.

---

## Case No. 11,591.

### RAY v. LAW.

[1 Cranch, C. C. 349.] [1]

Circuit Court, District of Columbia. Oct. Term, 1806.

### Costs—Security for Equity.

The law of Maryland respecting security for costs and fees does not apply to suits in equity.

In chancery. A rule had been laid on the complainant to give security for fees and costs.

Mr. Law, for defendant, now moved that the bill should be dismissed on the rule.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Refused. THE COURT, on considering the acts of Maryland on that subject, were of opinion that they did not apply to the court of chancery.

## Case No. 11,592.

### RAY v. LAW.

[1 Pet. C. C. 207.] 1

Circuit Court, D. Pennsylvania. April Term, 1816.

MALICIOUS PROSECUTION — HOLDING TO BAIL — PROBABLE CAUSE — EVIDENCE — PLEADING—VARIANCE.

1. In an action for a vexatious suit, and malicious holding to bail, the records of other actions brought by the same defendant against the plaintiff cannot be given in evidence.

2. Where the declaration states, that the sum demanded as bail, in a suit, was indorsed on the writ. no other evidence to establish the fact, that such sum was demanded as bail, can be given, than the exemplification of the record of the proceedings.

3. Demanding excessive bail, when the plaintiff has a good cause of action, or holding to bail where there is no cause of action, if done vexatiously, entitles the party injured to an action for a malicious prosecution. If bail be not demanded, no such action will lie.

[Cited in Closson v. Staples. 42 Vt. 213; Van Dresor v. King, 34 Pa. St. 201. Cited in brief in Mayer v. Walter, 64 Pa. St. 285.]

4. The failure of the plaintiff to recover. in a suit instituted by him, does not establish the fact, that the action was vexatious or unfounded.

[Cited in Brant v. Higgins, 10 Mo. 455; Pope v. Pollock, 46 Ohio, 369, 21 N. E. 356.]

5. Probable cause of action in a suit, upon the failure to recover in which, an action for a malicious prosecution is instituted, is a sufficient answer to such a suit.

This was an action [by James Ray against Thomas Law] for a malicious prosecution. The declaration stated, "that the defendant, maliciously, and without probable cause, brought an action against the plaintiff, in the circuit court of Maryland, upon a bill of exchange for three thousand dollars, and by an endorsement on the writ, to hold the plaintiff to bail for sixty thousand dollars, caused the plaintiff to be kept in confinement for want of bail, for a great length of time, and to be put to great expense, &c." The material facts in the case were as follows. The defendant, having sold to one Piercy a lot of ground in the city of Washington, to build a sugar house on, took a mortgage on the property, for securing the purchase money. He afterwards made sundry advances to Piercy, amounting, together with the purchase money, to the sum of seventeen thousand dollars. The plaintiff also made considerable advances to Piercy, for which he took a mortgage on the same property; but posterior in date to the mortgage to the defendant. The defendant filed a bill in the court of chancery of Maryland, to foreclose his mortgage; and a decree was made, for a sale

of the property, to the highest bidder. In consequence of this decree, the plaintiff, in order to prevent a sacrifice of this property, and thus endanger his security, agreed to satisfy the claims of the defendant against Piercy; and an agreement in writing was accordingly entered into, which stipulated, that the plaintiff should draw bills of exchange, on a house at Bombay, in favour of the defendant, to the amount of seventeen thousand dollars; and that the defendant, at the sale of the mortgaged property, should bid for the same, to the amount of ten thousand seven hundred dollars; and in case he should become the purchaser, should hold the same, as a security for the payment of the bills; and in case the same were paid, should convey the property to the plaintiff; until the fate of the bills should be known, the property was to be leased by the defendant to the plaintiff, at the rent of one dollar per year. Previous to the sale, the plaintiff gave private instructions, unknown to the defendant, to one Morgan, to attend and to bid for the property, for his (the plaintiff's) account; and to overbid the defendant, until he (the defendant) should have bid fifty-nine thousand dollars, when he was to stop. The defendant attended the sale, and bid the sum he had stipulated to bid. One La Porte overbid him, and the property was struck off to Morgan, the last and highest bidder. The trustee, appointed by the court of chancery to conduct the sale, demanded of Morgan a bond and security, for payment of the purchase money at the periods stated in the decree; which being refused, he declared La Porte to be the purchaser. This arrangement was conformable with the terms of sale, declared at the time the property was set up; though different from the decree, and from the terms stated in the advertisement. The plaintiff then filed a bill in the court of chancery, against the defendant and La Porte, for a conveyance to himself. The bills on India, having been returned protested, the defendant brought an action against the plaintiff, upon one of them, for three thousand dollars. After many continuances, the plaintiff in that suit, who was defendant in this, was nonsuited.

The plaintiff offered in evidence the records of actions brought upon other bills, which had been protested. This was objected to.

BY THE COURT. The declaration in this case, being for a vexatious suit, and holding to bail, in one action only; the other records cannot be given in evidence for any purpose.

The marshal of the court, who executed the writ in the case, the record of which was read, stated that writs were delivered to him, at the suit of the defendant against the plaintiff, upon which he arrested the plaintiff, and committed him to jail, for want of bail; but he could not be positive, whether the writ referred to in the declaration was one of them. He was asked by the plaintiff's counsel, whether he was not directed by the defend-

---

1 [Reported by Richard Peters, Jr., Esq.]